IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:19-CR-806-SNLJ-DDN |
| EDWARD WINGO, JR. | ) ) ) |
| Defendant. | ) ) |

## MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

COMES NOW Defendant Edward Wingo, Jr., through his attorney, Tyler K. Morgan, Assistant Federal Public Defender, and hereby moves to suppress any and all evidence seized by law enforcement officials from Mr. Wingo's 2000 Chevrolet Silverado on or about August 19, 2019. This evidence includes but is not limited to a black .380 caliber Ruger LCP pistol. This evidence was seized in violation of Mr. Wingo's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. Any statements made by Mr. Wingo after such unreasonable searches and seizures are fruit of the poisonous tree and should be suppressed.

Factual Background

1. According to police reports, on August 19, 2019, St. Louis County police officers working with the County's Special Response Unit ("SRU") were assisting the Division of Criminal Investigation in locating Mr. Wingo. Mr. Wingo was the subject of an ongoing domestic assault investigation. SRU Officers ran Mr. Wingo's name and saw that he had a

1

felony "Wanted" for domestic assault, a misdemeanor St. Louis County warrant, and a St. Louis City citation warrant. The SRU Officers had previously spoken with St. Louis County Detective Norberg, who told them that Mr. Wingo drove a gray 2000 Chevrolet pick-up truck and was known to carry a .380 handgun on his waistband or in the sunglasses holder of his truck.

2. Officers drove by Mr. Wingo's house at 4303 Melba Avenue. Officers observed Mr. Wingo sitting in the driver's seat of his parked truck in his driveway.

3. The Officers ordered Mr. Wingo to exit the vehicle and handcuffed him. Per the police report and the grand jury testimony of Officer Keener, after Mr. Wingo exited the vehicle and as he was being placed in handcuffs, officers on scene smelled a strong odor of marijuana emitting from inside the vehicle. Officer Moritz searched Mr. Wingo's person incident to arrest and found a bag of suspected marijuana in Mr. Wingo's shorts pocket. They did not find a firearm on Mr. Wingo's person.

4. Then, "[i]n order to further investigate the odor of marijuana emitting from inside Edward's truck, Officers searched the truck for additional marijuana." (Police report pg. 6). Officers then searched Mr. Wingo's truck for a lengthy period of time. They did not find additional marijuana. They did not find a firearm in the sunglasses holder. They did find, however, a firearm inside the fuse box after removing the plastic cover panel.

5. Officers were aware that Mr. Wingo had previously been convicted of a felony. They arrested Mr. Wingo for unlawful use of a weapon.

6. Officers took Mr. Wingo to the SRU office, where he was interviewed by Officer Keener.

2

7. Mr. Wingo allegedly told officers that the gun belonged to his brother and that his brother had been driving the truck. Mr. Wingo denied possession of the gun.

8. Mr. Wingo was subsequently charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Relevant Legal Standards

9. The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV.

10. Fourth Amendment analysis of warrantless searches begins "with the basic rule that 'searches conducted outside the judicial process, without prior approval by a judge or magistrate are per se unreasonable…subject to only a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009), quoting *Katz v. United States*, 389 U.S. 347, 356 (1967). The government bears the burden of showing "the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception." *United States v. Marshall*, 986 F.2d 1171, 1173 (8th Cir. 1993) (citing *Mincey v. Arizona*, 437 U.S. 385, 391 (1978)).

11. One such exception is a search incident to a lawful arrest. *Gant*, 556 U.S. at 338. A warrantless search of a vehicle incident to the recent occupant's lawful arrest is reasonable "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of

arrest." *Id.* at 351. A search is justified in these narrow circumstances to protect officer safety and prevent the concealment or destruction of evidence. *Id.* at 347.

12. Another exception is known as the automobile exception. Police may conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that vehicle contains contraband or other evidence of crime. *United States v. Farnell*, 701 F.3d 256, 264 (8th Cir. 2012). The automobile exception is justified in part because "a vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Collins v. Virginia*, 138 S. Ct. 1663, 1669 (2018) (quoting *Carroll v. United States*, 267 U.S. 132, 153 (1925). The automobile exception is also justified by "the pervasive regulation of vehicles capable of traveling on the public highways." *Id.* (quoting *California v. Carney*, 471 U.S. 386, 392 (1985)).

13. "Like the automobile exception, the Fourth Amendment's protection of curtilage has long been black letter law." *Id.* at 1670. "At the Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (internal quotations omitted). The curtilage, or the area "immediately surrounding and associated with the home," is regarded as part of the home for Fourth Amendment purposes. *Id.*, quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984).

14. The Supreme Court in *Collins v. Virginia* made it clear that the automobile exception is limited, and does not justify an officer's invasion into the curtilage of the home in order to search a vehicle. *Id.* at 1671. In *Collins*, an officer had probable cause to believe that a motorcycle parked in the top portion of petitioner's driveway, which was enclosed on two

4

sides by brick walls and on a third side by the wall of the house. *Id.* at 1670. The officer, who did not have a warrant, "walked onto the residential property and up to the top of the driveway to where the motorcycle was parked." *Id.* at 1668. The officer pulled a tarp that was covering the motorcycle off the motorcycle, and "ran a search of the license plate and vehicle identification numbers, which confirmed the motorcycle was stolen." *Id.* The officer then returned to his car, which was parked on the street. *Id.* When the petitioner arrived home, the officer spoke to him briefly and then arrested him. *Id.* at 1668-69. The trial court, Virginia Court of Appeals, and Supreme Court of Virginia all held that the warrantless search was justified. *Id.* at 1669. The Supreme Court reversed. *Id.*

15. The Supreme Court explained that "the scope of the automobile exception extends no further than the automobile itself." *Id.* (collecting cases). "Nothing in our case law… suggests that the automobile exception gives an officer the right to enter a home or its curtilage to access a vehicle without a warrant. Expanding the scope of the automobile exception in this way would both undervalue the core Fourth Amendment protection afforded to the home and its curtilage and 'untether' the automobile exception 'from the justifications underlying' it." *Id.*, quoting *Riley v. California*, 134 S.Ct. 2473, 2485 (2014) (quoting *Arizona v. Gant*, 556 U.S. 332, 343 (2009)). The Supreme Court found that the top portion of petitioner's driveway was the curtilage of his home, and declined to adopt Virginia's proposed limitation that only "fixed, enclosed structure[s] inside the curtilage like a garage" should be protected. *Id.* at 1674-75.

5

Analysis

16. The search of Mr. Wingo's truck cannot be justified as a search incident to arrest. *Gant* permits a search of a vehicle incident to arrest only when the arrestee is within reaching distance of the passenger compartment, or there is probable cause to believe the vehicle contains evidence of the offense of arrest. *Gant*, 556 U.S. at 351. At the time officers searched the truck, Mr. Wingo was already standing, handcuffed, on the driveway several feet from the car. There was no way for him to possibly reach a weapon in the passenger compartment of the truck. Further, according to police reports Mr. Wingo was arrested for "unlawful use of a weapon." The weapon, the .380 caliber Ruger pistol, was found during the search of the car. The pistol was not found in a search incident to arrest; rather, it formed the basis for the arrest.

17. Neither can the search of the truck be justified under the automobile exception. Had Mr. Wingo been driving his truck on a public highway and been lawfully stopped by the police who, upon approaching, smelled marijuana, his truck could undoubtedly be searched pursuant to the automobile exception. *See, e.g., United States v. Davis*, 569 F.3.d 813 (8th Cir. 2009); *United States v. Caves*, 890 F.2d 87 (8th Cir. 1989). Mr. Wingo's truck, however, was parked on his driveway outside of his home when officers arrived. There was no governmental interest in preventing the truck from leaving the jurisdiction – Mr. Wingo was in custody. The justification for the automobile exception outlined in *Carroll v. United States*, 267 U.S. 132 (1925), and *California v. Carney*, 471 U.S. 386 (1985) is absent.

18. Mr. Wingo's truck was parked on his driveway outside his house. It was therefore in the curtilage of his house, and enjoyed heightened Fourth Amendment protection. *See Collins v. Virginia*, 138 S.Ct. at 1671, 1673 n.3, and 1675.

19. Because the truck was in the curtilage of Mr. Wingo's home, the officers were not permitted to search is pursuant to the automobile exception, even though they had a warrant for Mr. Wingo's arrest. "The automobile exception…does not justify an intrusion on a person's separate and substantial Fourth Amendment interest in his home and curtilage." *Id.* at 1672. To hold otherwise would "unmoor the exception from its justifications, render hollow the core Fourth Amendment protection the Constitution extends to the house and its curtilage, and transform what was meant to be an exception into a tool with far broader application." *Id.*

20. There were no exigent circumstances that would prevent the officers from going to a judge with the evidence they already had (the bag of marijuana discovered on Mr. Wingo's person and the smell of marijuana emitting from truck), and obtaining a search warrant for Mr. Wingo's truck. The fact that the officers instead chose to search the car immediately without a warrant shows that it is more likely that the search was pretextual; they were looking for the gun that they had been told Mr. Wingo was known to carry.

21. The statements Mr. Wingo allegedly made after being confronted with the evidence seized during the unreasonable search of his truck are fruit of the poisonous tree and should be suppressed. *Wong Sun v. United States*, 371 U.S. 471 (1963).

## Conclusion

The warrantless search of Mr. Wingo's vehicle was not a search incident to arrest, nor was it justified by the automobile exception to the warrant requirement. It was an unreasonable search in violation of the Fourth Amendment and should be suppressed. Furthermore, the statements Mr. Wingo allegedly made after being confronted with the evidence seized during the unreasonable search are fruit of the poisonous tree should be suppressed.

WHEREFORE, Mr. Wingo requests that this Honorable Court sustain his Motion to Suppress Evidence and Statements and grant an evidentiary hearing.

Respectfully submitted,

/s/Tyler K. Morgan
TYLER K. MORGAN
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Tyler_Morgan@fd.org
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jillian Anderson, Assistant United States Attorney.

/s/Tyler K. Morgan
TYLER K. MORGAN
Assistant Federal Public Defender