IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-CR-806-SNLJ-DDN |
| | ) |
| EDWARD WINGO, JR. | ) |
| | ) |
| Defendant. | ) |

## SUPPLEMENTAL MEMORANDUM OF COUNSEL IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

Edward Wingo, through his attorney, Assistant Federal Public Defender Tyler Morgan, files this supplemental memorandum in support of his Motion to Suppress Evidence and Statements.

### I. The warrantless search of Mr. Wingo's truck exceeded the scope of the arrest warrant.

The Fourth Amendment draws a sharply circumscribed bubble around the home and the curtilage.[1] If an officer has a prior justification for an intrusion, and evidence comes into plain view while he is lawfully on the curtilage, the officer may not seize the evidence unless the incriminating character of the evidence is immediately apparent, and the officer has a lawful right of access to the object itself.[2]

---

[1] *Florida v. Jardines*, 133 S. Ct. 1409, 1414-15 (2013).
[2] *Horton v. California*, 496 U.S. 128, 136-37 (1990).

1

A valid arrest warrant carries with it implicit—albeit limited—authority to enter the residence of the person named in order to execute that warrant.[3] Absent exigent circumstances or consent, neither the home nor the curtilage may be searched without a warrant.[4] It is settled doctrine that probable cause for belief that certain articles subject to seizure are in a dwelling cannot of itself justify a search without a warrant.[5] Even if an officer sees illegal drugs through the window of a house, assuming no other exception applies, the officer cannot seize it without a warrant.[6]

The government asks this Court to treat the search of Mr. Wingo's truck like any other traffic stop in the street, where probable cause may justify a warrantless search.[7] Mr. Wingo respectfully submits that *Collins v. Virginia* controls, and that whether Mr. Wingo's truck was in the curtilage is decisive. The government states that whether the paved front driveway is curtilage "is not clear."[8] The front portion of Mr. Wingo's truck is closer to the house than the edge of the front porch, which the Supreme Court considers to be curtilage.[9] The truck is or is very nearly under the eaves of the home itself.[10] If the truck were parked any closer to the home, it would

---

[3] *United States v. Risse*, 83 F.3d 212, 215 (8th Cir. 1996) (quoting *Payton v. New York*, 100 S. Ct. 1371, 1388 (1980)).
[4] *United States v. Cisneros-Gutierrez*, 598 F.3d 997, 1003-04 (8th Cir. 2010).
[5] *Payton v. New York*, 100 S. Ct. 1371, 1381 n.26 (1980).
[6] *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018).
[7] Ex. A at 5 n.1 ("The United States respectfully submits that the Court need not reach [the issue of whether the paved front driveway is curtilage] as the officers had a warrant for the Defendant's arrest.").
[8] *Id.*
[9] *See* Ex. B; *Collins*, 138 S. Ct. at 1671.
[10] *See* Ex. B.

hit the garage door.[11] The facts of this case stand right at the intersection of *Collins v. Virginia* and *Payton v. New York*. Probable cause for belief that certain articles subject to seizure are in the curtilage cannot of itself justify a search without a warrant.[12] Because the police had an arrest warrant instead of a search warrant, the government's claim fails, and the fruits of the warrantless search should be suppressed.

## II. The automobile exception is not relevant to searches within the curtilage.

In their reliance on the automobile exception, the government fails to mention the critical fact that Mr. Wingo's truck was parked inside the curtilage. The government's reasoning goes something like this: because the officers were authorized to penetrate the protective bubble for the limited purpose of executing their arrest warrant, and because the officers were permitted to gather sensory information from their surroundings while they were inside the bubble, they were permitted to act as their own neutral and detached magistrate, searching objects within the bubble based upon their own probable cause determinations.[13] In adopting this line of reasoning the government overlooks the very purpose of the Fourth Amendment: to vest magistrates—not the police—with the power to determine

---

[11] *Id.*
[12] *Collins*, 138 S. Ct. at 1675; *Payton*, 100 S. Ct. at 1381 n.26.
[13] Ex. A at 6-7 ("The outstanding warrant for the Defendant's arrest justified the police officers traversing the curtilage of the residence… and therefore, the detection of the smell of marijuana emanating from the vehicle in the driveway of the residence did not arise from any unlawful search.")

3

probable cause.[14] The Supreme Court implicitly rejected this rationale in *Jardines* seven years ago by holding that officers in the curtilage for the limited purpose of a knock-and-talk overstepped their bounds by conducting a canine search.[15]

The government's reasoning was expressly rejected in *Collins v. Virginia*, where the Supreme Court held that the automobile exception cannot be used to search vehicles parked in the curtilage.[16] Because the curtilage is within the Fourth Amendment bubble, the automobile exception is simply not relevant within that bubble. Just as police could not search a vehicle parked inside the home without a warrant, the automobile exception furnishes no lawful right of access to vehicles parked in the curtilage.[17] Because the automobile exception is not relevant to searches in the curtilage, the government's claim fails, and the fruits of the warrantless search should be suppressed.

### III. Even if the automobile exception applied, Keener's testimony about a smell was not credible.

The Eighth Circuit has adopted a version of the plain smell doctrine, holding that the mere smell of marijuana can establish probable cause for a vehicle search

---

[14] *Coolidge v. New Hampshire*, 403 U.S. 443, 449 (1971) ("The point of the Fourth Amendment is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.")
[15] *Florida v. Jardines*, 133 S. Ct. 1409, 1417-18 (2013).
[16] *Collins*, 138 S. Ct. at 1671.
[17] *Id.*

4

under the automobile exception.[18] However, an officer's testimony must also pass the sniff test: testimony about the smell of marijuana must be credible before the search is upheld.[19] A threadbare allegation of a smell should not be enough to support a probable cause finding. The government should be able to point to facts that push the allegation into the domain of credible testimony.[20] Within the scope of the automobile exception, the importance of this Court's credibility findings cannot be overstated. Without careful credibility findings, the police could stop any motorist, dismantle their car, and admit incriminating evidence upon an officer's allegation of a plain smell.

Officer Keener is a member of the FBI's violent crime task force and St. Louis County's fugitive apprehension unit. Ex. C at 4. A detective from the domestic violence unit notified Keener that Mr. Wingo was wanted for questioning about an earlier domestic assault. Ex. C at 5. The detective also advised that Mr. Wingo was known to keep a .380 Ruger on his person, or somewhere in his truck. Ex. C at 7, 9. Keener's investigation also uncovered outstanding warrants and a violent criminal

---

[18] *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020); *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011).
[19] *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015).
[20] *Smith*, 789 F.3d at 929 (Officer testimony was credible when officer smelled marijuana, and was trained in the detection of controlled substances, including the odor of both raw and burned marijuana.); *United States v. Caves*, 890 F.2d 87, 91 (8th Cir. 1989) (fact that driver still smelled of marijuana and had been riding in the car for several hundred miles sufficient to establish probable cause that marijuana was still in the vehicle); *United States v. Whitley*, No. 15-00059-01-CR-W-DGK, 2015 WL 4877545 at *4 (W.D. Mo. Aug. 14, 2015) (denying motion to suppress when, inter alia, both officers testified that they were familiar with the smell of marijuana).

history. Ex. C at 7-8. Officer Keener knew from experience that he was likely dealing with a violent individual.

On the morning of August 19, Officer Keener and other officers geared up with ballistic vests, Ex. D at 2, and made their way to the residence. A total of 8 officers zeroed in on Mr. Wingo, who was alone in his driveway. Ex. C at 25-26. The officers yelled that they had a warrant for his arrest, to show his hands and get out of the truck. Ex. D at 3; Ex. C at 9. Mr. Wingo put his hands up and complied, and Officer Keener handcuffed him. Ex. C at 9. Officer Keener testified that he noticed a strong odor of marijuana emanating from inside Mr. Wingo's truck while he was putting handcuffs on Mr. Wingo. *Id.* at 10.

After Keener handcuffed Mr. Wingo, officers led him towards the back of his truck for a search incident to arrest. *Id.* at 10, 32. During the pat-down, the officers discovered an enclosed baggie of about 3 grams of marijuana in the right cargo pocket of Mr. Wingo's shorts. Ex. D at 3; Ex. C at 31. It was only then that Officer Keener decided that he had enough probable cause for a search. Ex. D at 3. Despite immediately identifying the truck as the source of the strong smell of marijuana, Keener did not inform fellow officers of the strong smell. His testimony indicates that he and he alone smelled it. Ex. C at 10. Keener did not search the truck until after marijuana had been discovered in Mr. Wingo's shorts, notwithstanding the strong odor that had been assaulting his nose. Ex. D at 3.

Officer Keener's testimony fails to pass the sniff test. Keener does not say that Mr. Wingo's person smelled like marijuana. *Id.*; Ex. C at 10. No officer ever mentioned

6

that Mr. Wingo smelled like marijuana, either during the search incident to arrest, during the interview at the station, or at any other time. Any smell-based search of the truck should result in finding marijuana. Keener found none.

Several additional facts fail to pass the sniff test. The police never asked Mr. Wingo about the strong odor. Mr. Wingo did not appear to be under the influence. Ex. C at 32. Officer Keener does not know how to distinguish raw marijuana from burnt marijuana. *Id.* at 31-32. Not only did Officer Keener fail to find marijuana in the truck; he also failed to find any evidence that drugs had been consumed or were being stored in the vehicle itself. *Id.* at 32. Mr. Wingo only had about 3 grams of raw, unsmoked marijuana in his pocket. *Id.* at 31. In this case, it would be incredible to believe that this very small amount of marijuana was not discernable to the officer from Mr. Wingo's person, yet permeated the pickup interior.

The government asks this Court to credit a highly sophisticated level of olfactory pinpointing that is simply not supported by the factual context. Keener claims to have smelled and identified the source of the strong odor, yet he never asked Mr. Wingo about it. He never told another officer about it. He waited until actual evidence was uncovered on Mr. Wingo's person before he began to search the truck for it. An officer's failure to mention the smell of marijuana to other officers and a delay between the smell and the search points towards incredible testimony.[21] In

---

[21] *United States v. Dolson*, 673 F. Supp. 842, 858-59 (D. Minn. 2009) (In finding that officer's testimony was not credible, the court reasoned that "if Trooper Engum had in fact smelled a strong odor of burnt marijuana before placing that call, it seems logical to expect that Trooper Engum would have mentioned his findings and his

7

light of the surrounding factual context, the improbability of Officer Keener's narrative should dictate the conclusion that he simply arranged his facts to avoid constitutional infirmity.[22] Because Officer Keener's testimony was not credible, the automobile search was not predicated on probable cause. The fruits of the warrantless search should be suppressed.

### IV. Mr. Wingo has a privacy interest in the Melba residence, which gives him standing to use the home as a basis for a challenge.

The government further argues that Mr. Wingo does not have standing to assert a privacy interest in the Melba residence, and that therefore he cannot use the residence as a basis for claiming that his truck was searched illegally. Ex. A at 7. The defendant moving to suppress bears the burden of proving that he had a legitimate expectation of privacy that was violated by the challenged search.[23] Factors relevant to standing include ownership, possession or control of the area searched or item seized, historical use of the property or item, ability to regulate access, the totality of the circumstances surrounding the search, the existence or nonexistence of a subjective anticipation of privacy, and the objective reasonableness of the expectation of privacy considering the specific facts of the case.[24]

The domestic violence victim told Detective Norberg that Mr. Wingo had been living in the Melba residence as recently as May, 2019. Ex. D at 6. She also told

---

intent to call for a canine unit to the members of the Task Force, because such findings would likely "pertain to" the Task Force's ongoing investigation.").
[22] *People v. Hill*, Ind. No. 853-2017, at *8 (N.Y. Sup. Ct. July 25, 2019).
[23] *United States v. Russell*, 847 F.3d 616, 618 (8th Cir. 2017).
[24] *Id.*

8

Detective Norberg that Mr. Wingo kept a rifle in a bedroom at the Melba home. *Id.* Detective Norberg told the investigating officer that the Melba home was Mr. Wingo's last known address. *Id.* at 2. Officer Keener also testified that the officers knew Mr. Wingo was "associated with" the Melba residence. Ex. C at 6. When asked what "associated with the residence" meant, Officer Keener admitted that it could mean that the suspect lives there. *Id.* at 20. When the police arrived, Mr. Wingo was sitting in his vehicle in the driveway, and was parked as close to the house as he could get. Ex. B. These facts should be more than sufficient to establish that Mr. Wingo had standing to assert a privacy interest in the Melba residence.

To support their standing argument, the government relies heavily on the fact that Mr. Wingo told the officers that he was renovating the residence, and that he wasn't living there. Ex. A at 7. Mr. Wingo made this statement *after* the intrusive vehicle search had occurred, however. Ex. D at 4-5. Mr. Wingo made this statement after he had been transported to the police station and his interview had concluded. *Id.* The officers searched his truck immediately after they patted him down, and before he made the statement. *Id.* at 3. This Court should not consider Mr. Wingo's statements since they were made after his Fourth Amendment interest was implicated. Because the defendant has carried his burden in showing he had a legitimate expectation of privacy in the Melba residence, the fruits of the warrantless search should be suppressed.

Mr. Wingo respectfully moves this Court to suppress all evidence derived from the search of his property, and for any other relief this Court may deem just under the circumstances.

Respectfully submitted,

/s/Tyler K. Morgan
TYLER K. MORGAN
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Tyler_Morgan@fd.org
ATTORNEY FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jillian Anderson, Assistant United States Attorney.

/s/Tyler K. Morgan
TYLER K. MORGAN
Assistant Federal Public Defender