UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | No. 4:19 CR 806 SNLJ / DDN |
| ) | |
| EDWARD WINGO, JR.,    ) | |
| ) | |
| Defendant.    ) | |

## ORDER AND RECOMMENDATION

Before the Court are the pretrial motions of the parties that were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b). The motions pending before the Court are those filed by defendant Edward Wingo, Jr., to suppress evidence (Docs. 16 and 32) and by the United States for a determination by the Court of the admissibility or not of any arguably suppressible evidence (Doc. 17). An evidentiary hearing was held on September 25, 2020. A transcript of the hearing has been filed. (Doc. 44.) The parties have filed post-hearing memoranda.

Defendant Wingo is indicted for possessing a firearm on August 19, 2019, knowing he had previously been convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1).

Upon consideration of the evidence adduced during the hearing and considering the arguments of counsel in their memoranda, the undersigned makes the following findings of fact and conclusions of law:

## FACTS

1.  On  August 19, 2019, St. Louis County Police Officer Thomas Keener was a member of the department's Special Response Unit (SRU) which focuses on fugitive apprehension in the St. Louis area. He has been a County police officer for ten years and a member of the FBI Violent Crime Task Force for one and a half years.

2.     Shortly before August 19, 2019, the SRU was contacted by the St. Louis County Police Domestic Violence Unit's Detective Norberg.  Det. Norberg requested assistance in locating Edward Wingo who was wanted for questioning regarding a violent domestic assault that had occurred several days earlier.  The SRU began its investigation of Wingo.  It learned there were outstanding arrest warrants for Wingo that had been issued by the Circuit Courts of both St. Louis County and the City of St. Louis.  In investigating his whereabouts, the SRU determined that Wingo "was associated"[1] with a residence at 4303 Melba in the City of Northwoods, in St. Louis County.  The officers also learned that Wingo was known to drive a gray or silver 2000 Chevrolet Silverado pickup truck and that he had previously been convicted of a felony offense in federal district court.  The officers learned from Det. Norberg that the victim of the domestic assault said that Wingo carried a .380 Ruger pistol either in the sunglass holder of his truck or in his waistband.  Det. Norberg also provided the SRU with a photo of Wingo.  Officer Keener had had no prior involvement with Wingo before August 19, 2019.

3.     In the early morning hours of August 19, 2019, SRU Officer Jordan drove in a marked police car past 4303 Melba and saw Wingo sitting in the Chevrolet pickup truck in the driveway of the residence.  Officer Jordan communicated that information to the other SRU officers.  The residence is a ranch-style, single level structure, with an attached one-car-wide garage.  The garage door faced the street at the end of a short, single lane driveway.  The pickup truck was parked immediately in front of the garage door which was closed.  The front of the house was in full view of the public and anyone approaching the front door would have to either walk up the driveway or walk next to it.  No wall or other

---

[1] In his hearing testimony Officer Keener used the quoted phrase to describe this lead to where Edward Wingo might be found.  (Doc. 44 at 6, 19-20) (The witness defined "associated with" generally as including any connection between a subject and a location that might be found in an arrest history, a police report, or another documentation of a crime occurrence.  The phrase could include a business or a residence, including the subject residing there or having a property interest in the place.)

barrier would prevent the public from fully viewing the driveway from the street to the garage door.  (Gov. Ex. 1, Def. Exs. 3, 4, and 5, photos of truck.)

      4.      As soon as they received the information from Officer Jordan, nearby SRU officers in several vehicles quickly converged on Wingo who was sitting in the driver's seat of the truck.  He was ordered to get out of the truck.  He immediately complied with his hands up.  He was immediately arrested, placed in handcuffs, and secured by officers at the rear of the truck, near a patrol car.  Immediately after he was handcuffed, Wingo's person was searched by Officer Moritz.  A small bag of marijuana was located in one of his pant pockets; no firearm was found on Wingo.

      5.      When Wingo opened the door to get out of the truck, Officer Keener immediately smelled the odor of marijuana coming from inside the truck.[2]  Officer Keener and three or four officers then searched Wingo's pickup truck for marijuana for five to ten minutes.  When they began the search, Wingo was handcuffed and secured at the back of the pickup truck.  The truck had many items in it, including tools in the back of the cab.  Officer Keener knew from his experience that places such as fuze boxes inside vehicles are voids in which narcotics and other contraband could be hidden.  Inside this truck's fuse box, which was located in the driver's seat area (Gov. Ex. 2; Def. Exs. 1 and 2, photos of

---

[2] In his post-hearing memorandum, defendant Wingo argues that Officer Keener's testimony that he smelled the odor of marijuana is not credible, because it is not corroborated by evidence that he told the other officers that he smelled it, because he did not testify that defendant's person smelled of marijuana, because no marijuana was found in the truck, and because the search of the truck did not occur until after marijuana was found on defendant's person.  (Doc. 4-8.)

The undersigned credits Officer Keener's testimony that he smelled the odor of marijuana emanating from the truck cab when defendant got out of the truck, because he was then a very experienced law enforcement officer, marijuana was found on defendant's person after he alighted from the truck, in a post-arrest statement Wingo admitted possessing marijuana that morning (Doc. 44 at 12), and Officer Keener testified that, when the officers entered the truck to search it, they were focusing on finding marijuana (Doc. 44 at 34-39).

fuse box), Keener found and seized a .380 semiautomatic handgun. No marijuana or marijuana ashes were found in the truck.

6. After the handgun was found, Officer Keener interviewed Wingo. Before questioning him, Keener orally advised Wingo of his *Miranda* rights to remain silent and to counsel. In answer to the officer's questions, Wingo admitted to then using marijuana; he said he had found it the night before at a nightclub. Wingo stated he was not then living in the residence at 4303 Melba, but that it was being renovated by him and his uncle, whose name was Franklin. Wingo said the house was not being lived in by anyone at that time, but he kept items in the house, including possibly a rifle. He also told the officer he had been sleeping in the pickup truck that morning before the police arrived. During the interview, Wingo was cooperative with the officers and did not appear to be intoxicated.[3]

7. During the interview, Officer Keener asked Wingo for his consent to the officers entering the residence. Wingo gave his consent. The officers took Wingo to the residence and entered it with his key. They were in the residence for a brief time. Officer Keener saw that the residence was not furnished. He saw a table and some suitcases and other bags in the living room area. The police did not search the bags or the suitcases. The place did not look occupied. No weapon or contraband was found in the house.

8. The officers did not have a search warrant for the truck or for the residence on August 19, 2019.

## DISCUSSION

Defendant moves to suppress as evidence against him the firearm seized from the truck and his post-arrest statements. Generally stated, he argues that the warrantless search of the truck cannot be justified as a search incident to his arrest or under the automobile exception to the warrant requirement of the Fourth Amendment, and he argues there were no exigent circumstances that excused the officers' failure to obtain a judicial warrant. The

---

[3] The hearing record contains no evidence that at any time the officers subjected Wingo to any promises, coercion, or intimidation to get him to cooperate with them.

government argues that defendant has no standing to complain about the search and seizure at 4303 Melba.

### *(a)  The firearm seized from the truck*

The firearm was seized during a warrantless search of defendant's pickup truck. He argues that this search exceeded the scope of the arrest warrants for him and violated the Fourth Amendment.[4]

First, defendant must establish that he has standing to complain about the search and seizure that produced the evidence he seeks to have suppressed; that standing depends upon him having a legitimate expectation of privacy in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Minnesota v. Carter,* 525 U.S. 83, 88, 90-91 (1998); *United States v. Stallings*, 28 F.3d 58, 60 (8th Cir. 1994). Defendant argues he has such a constitutionally protectible interest in the interior of his pickup truck, because the vehicle was located within the curtilage of the residence at 4303 Melba.

*Defendant's standing regarding the interior of 4303 Melba*

The record establishes that on August 19, 2019, defendant had a constitutionally protectible expectation of privacy in the residence at 4303 Melba. Such an interest is comprised of two elements:  (a) a subjective expectation of privacy in the location (b) that is objectively reasonable. *United States v. Douglas*, 744 F.3d 1065, 1069 (8th Cir. 2014). Relevant factors to be applied were stated by the Eighth Circuit Court of Appeals in *United States v. Russell*:

---

[4] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

U. S. Const. amend IV.

> [O]wnership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

847 F.3d 616, 618 (8th Cir. 2017) (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

To establish a constitutionally protectible privacy interest in the residence, defendant points to (a) Det. Norberg's statements to the police describing statements by the domestic violence victim that defendant was living in the residence as recently as May 2019 and that defendant kept a rifle in the bedroom there;[5] (b) Det. Norberg's statement to the police that 4303 Melba was defendant's last known address;[6] (c) the fact that law enforcement believed defendant was "associated with" the residence, meaning he could be living there; and (d) that the police found defendant in the truck which was parked very close to the attached garage of the residence.

The government counters defendant's standing argument with (a) defendant's post-arrest statements that he was renovating the residence and was not living there; (b) law enforcement's belief defendant's being "associated with" the residence being able to mean that the residence was a business location *or* a residence; (c) defendant being found sleeping in the truck outside the residence with his tools in the truck; (d) defendant's post-arrest statements to police that he did not live there and that no one lived there because he

---

[5] The hearing evidence was that defendant told Officer Keener in the post-arrest interview that he might have a long gun inside 4303 Melba.  (Doc. 44 at 25.)

[6] The hearing contained no evidence that Det. Norberg told the SRU officers that 4303 Melba was defendant Wingo's "last known address."  Indeed, questions seeking that information were asked of Officer Keener, but he did not respond in the affirmative to that characterization of the address.  In response to the question, he stated, "I – typically, we have all the addresses associated with.  At this specific time, I can't think of what that would have been -- . . . .  "We knew that he was associated with that address. . . . [and that generally the term "associated with" could include] a residence . . . ."   (Doc. 44 at 19-20.)

and his uncle were renovating the house;[7] and (e) Officer Keener's observation that the interior of the house was not furnished and did not appear to be lived in by anyone.

Defendant's relationship to the house at 4303 Melba has elements of both possible residence and more definitely a place of employment. Defendant argues that his employment inside the residence established the required standing. The Court agrees. Standing regarding a workplace requires a reasonable expectation such that the individual would expect that his involvement with the location would be affected only by persons who had permission to enter the area. *See Mancusi v. DeForte*, 392 U.S. 364, 369-70 (1968). As stated above, standing requires the establishment of the individual's subjective expectation that the area is private to him in a substantial way. *United States v. Smith,* 2008 WL 2224782, at *6 (E. D. Mo. May 27, 2008). In this case, defendant Wingo told the police he was in his truck because he had been sleeping there, not inside the house. He had been renovating the house and there were no furnishings for sleeping in the house. Defendant had the key to the house, the police asked for his consent to enter it, which he gave, and they used his key to enter it. The facts are consistent with a substantial interest on his part with keeping the interior of the house private to himself and his uncle.

The undersigned concludes that defendant had a subjective and reasonable expectation of privacy in the residence.

*The curtilage of 4303 Melba and the location of the truck*

The Eighth Circuit Court of Appeals recently described the relationship between the Fourth Amendment and one's curtilage thusly:

> The Fourth Amendment guarantees "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. At the Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable

---

[7] Defendant argues that the Court should disregard these statements by him because they were made after he had been transported to the police station and "his Fourth Amendment interest was implicated." (Doc. 45 at 9.) This argument is without merit, because defendant was lawfully arrested and, as set out below, his statements were voluntary.

> governmental intrusion. The Fourth Amendment does not, however, prevent all investigations on private property. Whether a particular search violates the Fourth Amendment requires examination of whether the person claiming the constitutional violation had a legitimate expectation of privacy in the premises searched.
>
> Thus, the Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. On the other hand, the right to be free from unreasonable searches in one's home would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity. Accordingly, the Fourth Amendment's protections extend to the curtilage surrounding a home, which is the areas to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes. Thus, curtilage generally should be treated as the home itself.

*United States v. Bennett*, 972 F.3d 966, 970-71 (8th Cir. 2020) (internal quotation marks and citations omitted) (cleaned up).

While defendant had a constitutionally legitimate expectation of privacy in the house, he nevertheless has not established that his truck, the location where the firearm was found and seized, was located within the curtilage of the residence. He argues that, if the truck was within the curtilage of the residence in which he had a constitutionally protectible privacy interest, the Court may not consider the automobile exception to the Fourth Amendment warrant requirement, citing *Collins v. Virginia*, 138 S. Ct. 1663 (2018).

In *Collins* a police officer saw the driver of an orange and black motorcycle with an extended frame commit a traffic infraction. The motorcycle driver fled from the officer. Weeks later, another officer from the same department saw a similarly colored motorcycle being driven faster than the speed limit. The driver in this incident also eluded the officer. The two officers conferred and decided the same cyclist was involved. Further information indicated that the motorcycle likely was stolen and was being possessed by Ryan Collins. Through investigation, including Collins's social media postings, which included a photo of the motorcycle in the driveway of a house, the officers determined the address of the

house. One of the officers drove there and parked on the street. From that station, the officer saw what looked like a motorcycle with an extended frame parked in the driveway covered by a tarp. The officer left his police vehicle, walked up the driveway, pulled off the tarp and saw a motorcycle that looked like the one involved in the speeding incident. A computer search of the license plate and the vehicle identification number revealed this motorcycle had been stolen. The officer photographed the uncovered motorcycle, replaced the tarp, and returned to his police car to await Collins's return.

After Collins returned and entered his house, the officer walked to the front door, knocked, and spoke with Collins who answered the knock. Collins admitted buying the motorcycle without a title. The officer then arrested Collins, who was charged with receiving stolen property.

In his criminal case, Collins moved to suppress the evidence the officer acquired by the warrantless search of the motorcycle, because the officer's trespass entry onto the curtilage of his residence and investigation violated the Fourth Amendment. The trial court denied the motion. The Virginia Court of Appeals and the Virginia Supreme Court affirmed the conviction, the latter court relying on the automobile exception to the warrant requirement. The Supreme Court of the United States reversed.

The Supreme Court first determined that the motorcycle, when it was searched, was situated within the curtilage of Collins's residence. Curtilage is a place, which is "immediately surrounding and associated with the home," and is "part of the home for Fourth Amendment purposes." *Collins v. Virginia*, 138 S. Ct. at 1670 (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). The Court determined that the area of driveway (on which the tarp-covered motorcycle was searched) that was behind the front perimeter of the house and that was enclosed on two sides by a brick wall the height of a car and on the third side by the side of the house was curtilage within the protection of the Fourth Amendment. *Id.* at 1670-71.

The undersigned concludes that the place where defendant Wingo's truck was parked was not within the curtilage of the house at 4303 Melba. The photo both parties introduced into evidence during the suppression hearing (Gov. Ex. 1 and Def. Ex. 1) shows

- 9 -

no protective wall or other physical barrier to protect any privacy in the area where defendant's pickup truck was found by the officers. That area was in front of, although adjacent to, and not behind (as was the location in *Collins*) the front perimeter of the residence. It was on a driveway, one car-width wide, that was a walkway available to anyone for walking to the front door of the residence. It was an area that was in full view of any member of the public situated on the street and was not an area "to which extends the intimate activity associated with the sanctity of a [] home and the privacies of life." *Bennett*, 972 F.3d at 971. Thus, the undersigned concludes that the area where defendant Wingo's pickup truck was parked and where the officers encountered defendant was not within the curtilage of the residence at 4303 Melba for purposes of the Fourth Amendment.

*Defendant's standing regarding the interior of the truck*

If defendant Wingo had established that his truck was within the curtilage of the house at 4303 Melba, which the undersigned concludes he did not, the Supreme Court's ruling in *Collins* renders the automobile exception to the warrant requirement unavailable to the government. When an "officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred [and] is presumptively unreasonable absent a warrant." *Collins, 138 S. Ct.* at 1670. Collins's motorcycle was located in the curtilage, and Collins had a protectible interest in both the motorcycle and the curtilage. The Court held that the automobile exception to the Fourth Amendment warrant requirement was unavailable, because that "exception does not afford the necessary lawful right of access to search a vehicle parked within a home or its curtilage because it does not justify an intrusion on a person's separate and substantial Fourth Amendment interest in his home and curtilage." *Id.* at 1672.

While defendant did not establish standing for the interior of the truck based on its location, the record is clear, and the government does not argue to the contrary, that defendant has an interest in the interior of the truck that is protectible under the Fourth Amendment even without considering its location. Applying the standing factors stated above, defendant had standing to contest the seizure of the firearm from his truck. The

record established that he had possession and control of the truck. Law enforcement identified him as associated with the truck. He slept in it the night before his arrest. It was full of tools and other of his belongings. All of the circumstances established that he had a subjective anticipation of privacy in its interior and his expectation of privacy was reasonable. *See Russell,* 847 F.3d at 618 (relating to the search of a motor vehicle).

Having established that defendant has standing regarding the warrantless search of his vehicle, the government has the burden of establishing an exception to the warrant requirement. *United States v. Marshall*, 986 F.2d 1171, 1173 (8th Cir. 1993). The government argues that the automobile exception applies in this case. (Doc. 34 at 6.)

*The automobile exception*

In *Pennsylvania v. Labron*, 518 U.S. 938 (1996), the Supreme Court briefly described the automobile exception as requiring the vehicle's "ready mobility" being "sufficient to excuse the failure to obtain a search warrant once probable cause to conduct the search is clear." *Labron*, 518 U.S. at 940 ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.").

Both elements of the automobile exception, ready mobility and probable cause, exist in defendant's case. He does not argue he was not lawfully arrested by virtue of the existing arrest warrants. When he opened the door, Officer Keener smelled the odor of marijuana emanating from the truck. The Eighth Circuit Court of Appeals has "repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." *United States v. Williams,* 955 F.3d 734, 737 (8th Cir. 2020) (citing *United States v. Mayfield,* 678 F. App'x 437, 439 (8th Cir. 2018), and *United States v. Brown,* 634 F.3d 435, 438 (8th Cir. 2011)).

In describing the lawful scope of a search under the automobile exception, the Supreme Court in *United States v. Ross,* 456 U.S. 798 (1982), stated, regarding an automobile stopped by police "who have probable cause to believe that contraband is concealed somewhere within it, . . . "[w]e hold that [police] may conduct a search of the

vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'" *Id.* at 800. In concluding, the *Ross* Court stated, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825. *See also United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013) (automobile exception authorized search of area in the interior of vehicle after removing a piece of the dashboard).

There being probable cause to believe defendant's drivable truck contained marijuana, the warrantless search of the truck and the seizure of the weapon from it were lawful under the Fourth Amendment.

*Search of truck incident to the lawful arrest*

The government does not seek justification for the search of the truck as being incident to his lawful arrest. Nevertheless, defendant acknowledges the potential relevance of this exception to the warrant requirement. (Doc. 32 at 3.) Defendant does not argue that his arrest was unlawful. (Doc. 45 at 2) (treating the limited authority of an arrest warrant for the entry of police into the home or curtilage for the purpose of arresting the subject of a warrant).

Defendant Wingo was lawfully arrested by the police. It is undisputed that, irrespective of the domestic assault investigation by the officers then occurring, the police had verified knowledge that there were arrest warrants outstanding for defendant. Police with an arrest warrant may validly enter an area protected by the Fourth Amendment to effect an arrest. *Payton v. New York*, 445 U.S. 573, 603 (1980). Defendant was commanded to exit his truck and he did so. He was then arrested.

The ability of law enforcement to search an area incident to a lawful arrest was recently limited by the Supreme Court. In *Arizona v. Gant*, 556 U.S. 332 (2009), the Court stated, "[a]fter Rodney Gant was arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car, police officers searched his car and discovered cocaine in the pocket of a jacket on the backseat. Because Gant could not have accessed

his car to retrieve weapons or evidence at the time of the search . . . the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement . . . did not justify the search in this case." 556 U.S. at 335. The Court further stated, "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Id.* at 339. "Because police could not reasonably have believed that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable." *Id.* at 344.

The search incident to arrest exception to the warrant requirement of the Fourth Amendment is inapplicable to defendant Wingo's case. When the search of the truck was performed, he had been arrested, handcuffed, and removed to a location where he was secured. He was unable to gain access to the interior of the truck to reach the firearm that was found or perhaps any evidence remaining inside.

Nevertheless, as stated above, the seizure of the firearm was lawful under the automobile exception to the warrant requirement of the Fourth Amendment.

### *(b)  Defendant's post-arrest statements*

Shortly after his lawful arrest, defendant was interrogated by Officer Keener. Defendant made oral statements in response to the officer's questions. He now seeks the suppression of these statements on the sole ground that they are the fruit of the poisonous tree that fell to the ground from the asserted violations of his Fourth Amendment rights. (Doc. 32 at 7.)

As set out above, defendant's Fourth Amendment rights were not violated by the warrantless search of his truck. Defendant's post-arrest statements should not be suppressed.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the oral motion of the United States for a determination of the admissibility or not of any arguably suppressible evidence (Doc. 17) **is denied** as mooted by the proceedings held on the defendant's motions to suppress.

**IT IS HEREBY RECOMMENDED** that the motions of defendant Edward Wingo, Jr., to suppress evidence (Docs. 16 and 32) **be denied.**

The parties have 14 days to file written objections to this Order and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

/s/ David D. Noce

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 15, 2021.